IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JACOB COLBY SPRADLIN,**

    **Plaintiff,**

v.                                                              Case No. 3:19-cv-00367

**SUPERINTENDENT JOSEPH WOOD,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On May 6, 2019, Plaintiff filed a *pro se* complaint against Defendant under 42 U.S.C. § 1983. (ECF No. 2). Currently pending are Plaintiff's application to proceed without prepayment of fees and costs, (ECF No. 1), and an initial screening of the complaint under 28 U.S.C. § 1915. This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly reviewed the complaint, the undersigned **FINDS** that Plaintiff fails to state a claim upon which relief can be granted. Therefore, the undersigned **GRANTS** Plaintiff's application to proceed *in forma pauperis*, but **RECOMMENDS** that the presiding District Judge **DISMISS** the complaint, **with prejudice**, and **REMOVE** this matter from the docket of the Court.

I.     **Factual and Procedural History**

On May 6, 2019, Plaintiff, Jacob Spradlin ("Spradlin"), a prisoner incarcerated in the Western Regional Jail and Correctional Facility in this judicial district, filed a *pro se* civil complaint under 42 U.S.C. § 1983 against "Superintendent Joseph Woods" ("Woods"). (ECF No. 2). Spradlin stated that he "was housed in a sex offender pod and was assaulted by inmate Arton Adkins [who] by classification was not supposed to be housed with the inmates with sex charges." (*Id*. at 4) (spelling corrected). Spradlin further contended that he was "sent to A5 for lockdown" for fighting and, at some point, was sprayed with pepper spray, which constituted cruel and unusual punishment. (ECF Nos. 2 at 8, 5 at 1). Plaintiff alleged that he suffered a broken nose and mental anguish from the assault, and he explained that he sought "the lump sum of $150,000" to compensate him for his injuries and the cost of filing this lawsuit. (ECF No. 2 at 5, 8).

The undersigned conducted a preliminary review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) and determined that the complaint did not include any factual allegations pertaining to the only named defendant, Woods. (ECF No. 4 at 2). Therefore, the undersigned advised Spradlin by Order dated May 10, 2019 that § 1983 requires allegations that an official personally deprived the plaintiff of his or her federal rights. The undersigned ordered Spradlin to amend his complaint to set forth factual allegations explaining how Woods violated Spradlin's rights, or the undersigned would recommend dismissal of the complaint for failure to state a claim upon which relief can be granted under § 1983 and/or failure to prosecute under Fed. R. Civ. P. 41 and L. R. Civ. P. 41.1. (*Id*. at 3). The undersigned additionally noted, in light of Spradlin's pending application to proceed without prepayment of fees or costs, that U.S.C. § 1915(g) includes a "three strikes" provision. Under the statute, a prisoner who previously filed three actions or

appeals that were dismissed as being frivolous, malicious, or failing to state a claim is barred from bringing *in forma pauperis* civil actions unless the prisoner is in imminent danger of serious physical injury. (*Id.* at 3-4). The undersigned advised Spradlin that he previously filed a civil action that was dismissed for failure to state a claim, which counted as his first strike under § 1915(g), and recommended that Spradlin carefully review his complaint to determine if he wished to proceed. (*Id.*).

In response, Spradlin filed an amended pleading reiterating the same claims that he stated in his complaint. (ECF No. 5). Spradlin again specified that he was harmed by Arton Adkins ("Adkins") on April 14, 2019 and that he came into contact with pepper spray when he was in the lockdown pod after the incident. (ECF No. 5 at 1). Spradlin repeated that Adkins was not a sex offender and should not have been in the sex offender pod with Spradlin, because Jail policy provided that inmates should only be housed with inmates of similar classification. (*Id.* at 1-2). He added that he placed "blame on who was in charge of same housing." (*Id.* at 2). However, Spradlin did not mention Woods by name in his amended pleading or add any factual allegations relating to him. (ECF No. 5).

## II. **Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915, the Court must screen each case in which a prisoner seeks to proceed *in forma pauperis* (without prepayment of fees and costs). Further, pursuant to 28 U.S.C. § 1915A, the Court must screen each case in which "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e). A "frivolous" case has been defined as one which is based upon an

3

indisputably meritless legal theory, *Anders v. California,* 386 U.S. 738, 744 (1967); *Denton v. Hernandez,* 504 U.S. 25 (1992), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Likewise, a complaint fails to state a compensable claim and should be dismissed when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Supreme Court further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

This Court is required to liberally construe *pro se* pleadings, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the pleading must state sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>Discussion</u>

As noted, Spradlin filed this case pursuant to 42 U.S.C. § 1983. (ECF No. 2). Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation and markings omitted). Instead, section 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color

4

of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to maintain a *prima facie* case under § 1983, a plaintiff must show through factual allegations that he was (1) deprived of a right secured by the Constitution or laws of the United States, and that (2) the deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983.

Importantly, liability attaches under § 1983 only where it is affirmatively shown that the defendant acted personally in the deprivation of the plaintiff's rights. *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977). As such, prison officials cannot be held liable under § 1983 simply because they are supervisory personnel. *See Monell v. Department of Social Services of City of N. Y.,* 436 U.S. 658, 691 (1978) (holding that liability under § 1983 is personal, based on each defendant's own acts; thus, claims of *respondeat superior* are not cognizable in a civil rights action). Rather, the § 1983 plaintiff must show that the defendant's supervisory indifference or tacit authorization of his or her subordinate's misconduct was a causative factor in the constitutional injuries that the subordinate inflicted on those committed to his or her care. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994). Specifically, to state a claim based on supervisory liability, the plaintiff must show: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to

that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw,* 13 F.3d at 799.

In regard to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* "As to the second element, a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses.'" *Wilkins v. Montgomery,* 751 F.3d 214, 226–27 (4th Cir. 2014) (quoting *Shaw,* 13 F.3d at 799). Finally, when addressing the third element, "proof of causation may be direct ... where the policy commands the injury of which the plaintiff complains ... or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Rauch v. West Virginia Div. of Corrections,* No. 2:13–cv-0468, 2014 WL 3732123, at *4 (S.D.W. Va. July 25, 2014) (quoting *Wilkins,* 751 F.3d at 226–27) (citations omitted).

In this case, Spradlin alleges that he was assaulted by another inmate, who he argues should not have been housed with him in the sex offender pod per Jail policy, and that he was exposed to pepper spray in "lockdown." However, Spradlin does not allege that Woods was in any way directly involved in the events giving rise to the Complaint. He does not assert that Woods placed the other inmate in the pod, or directed that the inmate be placed with Spradlin. Similarly, he does not allege that Woods was the person who unintentionally sprayed Spradlin with pepper spray. Rather, Spradlin states that

6

Woods denied an administrative grievance concerning the incident. Furthermore, Spradlin asserts that he sued Woods, because Woods is the person "who was in charge" of enforcing the policy that inmates of similar classifications be housed together. (ECF Nos. 2 at 3, 5 at 2).

Regarding Woods's denial of Spradlin's administrative grievance, it does not appear that Spradlin claims that Woods is liable to him under § 1983 on this basis. (ECF Nos. 2, 5). Nevertheless, because the only reference to Woods by name in the pleadings is regarding the grievance, it bears mentioning that prisoners do not have any constitutional right to the grievance procedure, and the denial of a grievance does not give rise to a § 1983 claim. *Matney v. Haysi Reg'l Jail*, No. 7:19CV00067, 2020 WL 185168, at *3 (W.D. Va. Jan. 13, 2020); *Boose v. W. Reg'l Jail*, No. 3:18-CV-01480, 2019 WL 5681226, at *6 (S.D.W. Va. Oct. 8, 2019), *report and recommendation adopted,* 2019 WL 5681193 (S.D.W. Va. Oct. 31, 2019). Therefore, Spradlin does not assert a viable claim against Woods on the ground that Woods denied Spradlin's grievance.

Next, insofar as Spradlin sued Woods on the sole basis that he is the superintendent of the Jail, he fails to assert a viable claim under § 1983. Spradlin does not allege any facts that Woods had actual or constructive knowledge of a pervasive and unreasonable risk of injury to inmates like Spradlin, that Woods was deliberately indifferent to such risk, or that there was any causal link between Woods's inaction and Spradlin's injuries. Spradlin merely states that on an isolated occasion a non-sex offender inmate was placed in his pod and that such inmate assaulted him. He does not assert any factual allegations that the Jail placed inmates of other classifications in the sex offender pod as a common practice, or that it even happened more than once. Moreover, Spradlin does not assert any facts to indicate that placement of the non-sex offender inmate in his

7

pod put him at any known or foreseeable risk, or that he was assaulted because he was a sex offender and the other inmate was not.

To the extent that Spradlin relies on the supposed Jail policy that inmates of similar classifications should be housed together, his claim is unavailing. In *Bradshaw v. Harden*, a district court dismissed a case on initial screening in which the plaintiff alleged that supervisory officials at a correctional center violated the plaintiff's rights by failing to protect him from other inmates. *Bradshaw v. Harden*, 401 F. App'x 805, 806 (4th Cir. 2010). The plaintiff alleged that a prison officer issued him a mop and broom in violation of written prison policy, and the supplies were subsequently used by two other inmates to assault him. *Id.* In considering the case on appeal, the United States Court of Appeals for the Fourth Circuit noted that the plaintiff did not name as a defendant the individual officer that allegedly violated the cleaning supplies policy. *Id.* Rather, the plaintiff named as defendants the officials that had supervisory roles at the prison, and he alleged that they violated his rights by failing to enforce the cleaning-supplies policy. *Id.* The Fourth Circuit agreed with the district court's analysis that the plaintiff did not allege any facts that would have put the defendants on notice that the policy was being violated. *Id.* at 806-07. As such, the Court concluded that the plaintiff could not "show that the supervisors demonstrated deliberate indifference to, or tacit authorization of, the conduct of their subordinates," and "the district court did not err in dismissing [the] complaint insofar as it relied on a theory of supervisory liability." *Id.* at 807.

Similarly, in this case, Spradlin's bare statement that a non-sex offender was housed in his pod contrary to Jail policy fails to state a constitutional claim, and it certainly does not impute liability to Woods without any showing that Woods disregarded a substantial risk of harm of which he knew or should have known. *Matney v. Haysi Reg'l*

*Jail*, No. 7:19-CV-00067, 2020 WL 185168, at *3 (W.D. Va. Jan. 13, 2020) ("A claim that jail staff did not follow jail policies or procedures also does not state a constitutional claim."); *Burgess v. Wehn*, No. TDC-18-2168, 2019 WL 4277402, at *4 (D. Md. Sept. 10, 2019) (stating that the plaintiff failed to plead or demonstrate sufficient facts showing that the defendants "exhibited supervisory indifference to, or tacit authorization of, any misconduct," and, in particular, there was "no allegation or evidence that these officials were aware of or involved in the alleged failure to protect [the plaintiff] from an attack by fellow inmates). Given that Spradlin has no constitutional right to choose his classification or housing options, *see Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976), and he provides no other ground for recovery against Woods under § 1983, the undersigned **FINDS** that Spradlin's complaint fails to state a claim for relief may be granted.

## IV.  Proposal and Recommendations

For the reasons set forth above, the undersigned **GRANTS** Plaintiff's application to proceed *in forma pauperis*, (ECF No. 1), but **RECOMMENDS** that the presiding District Judge **DISMISS** the complaint, **with prejudice**, (ECF No. 2), and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such

objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED:** February 24, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge